IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DANYEL P.,**[1]

    **Plaintiff,**

v.

    **Civil Action 2:21-cv-2405**
    **Judge Edmund A. Sargus, Jr.**
    **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Danyel P., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). Pending before the Court is Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 8). Plaintiff did not file a Reply. For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff protectively filed her application for SSI on January 15, 2019, alleging disability beginning October 1, 2013, due to idiopathic intracranial hypertension (IIH), diabetes mellitus, Hashimoto thyroiditis, hypertension, sleep apnea, osteoarthritis, anxiety, depression,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to Plaintiffs only by their first names and last initials.

fibromyalgia, and tachycardia. (R. at 178-184, 200.) Plaintiff's application was denied initially in April 2019, and upon reconsideration in July 2019. (R. at 70-113.) On April 16, 2020, Plaintiff, who was represented by counsel, appeared and testified via telephone at a hearing held by an administrative law judge. (R. at 32-69.) A vocational expert ("VE") also appeared and testified. (*Id.*) On October 7, 2020, Patricia Witkowski Supergan (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-31.) On March 11, 2021, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the agency and the relevant hearing testimony:

> [Plaintiff] alleges that her mental and physical impairments restrict her ability to function to such an extent that she cannot meet the demands of any full-time employment. Specifically, [Plaintiff] alleges that her IIH, and the shunt implanted in her brain to relieve the related pressure, causes an impairment of her memory, problems with her gait, confusion and the inability to think of words, headaches, an inability to stand for more than 15- 20 minutes, and vision issues with intermittent blindness. She also alleges that her head pain and dizziness can make standing or sitting impossible at times. [Plaintiff] also reports that her diabetes is not well controlled, and that she tends to have elevated blood sugar levels. She claims that she has also developed neuropathy, which adds to her difficulty standing or walking. [Plaintiff] reports that she regularly uses a cane, and a walker, and that she has been prescribed a wheelchair, but that she has not started using that yet. [Plaintiff] also alleges that she has depression, and anxiety, for which she is seeing a therapist, and that her memory issues can sometimes trigger panic or anxiety. [Plaintiff] reports that her medication can cause anxiety, fatigue, dizziness, or confusion. [Plaintiff] also alleges sleep impairments, and reports that her anxiety makes falling asleep difficult, while body pain wakes her up.

(R. at 20 (internal citations omitted).)

### III.     MEDICAL RECORDS AND OPINIONS

The ALJ summarized Plaintiff's medical records and symptoms related to her physical impairments as follows:

> [Plaintiff] has a history of treatment for most of the alleged impairments, including fibromyalgia, cervical stenosis, bilateral knee osteoarthritis, obesity, and pseudotumor cerebri, as well as other conditions and symptoms, that pre-dates the alleged onset date of October 1, 2013, and the filing date in this claim of January 15, 2019. [Plaintiff] was diagnosed with obstructive sleep apnea in late 2017. [Plaintiff] had developed pseudotumor cerebri, and had a ventriculoperitoneal (VP) shunt placed in June of 2018, to relieve the internal spine and brain pressure.
>
> ***
>
> During a physical examination on January 10, 2019, [Plaintiff's] primary care physician noted that: she appeared to be minimally ill, and seemed to be in mild pain; her cardiovascular and respiratory indicators were all normal; her gait was slowed (with no other commentary on any musculoskeletal issue); and her mental status was alert and oriented, with appropriate affect and demeanor. However, her blood sugars were running in the 400-500 range. [Plaintiff] was admitted to give her I.V. hydration, and to address her high blood glucose levels. From January 10-12, 2019, [Plaintiff] was treated in the hospital to evaluate a headache with hyperglycemia. [Plaintiff's] insulin was increased, and an additional evening dose added, in an effort to control the hyperglycemia.
>
> On January 17, 2019, [Plaintiff] complained of persistent head, neck, back, and knee pain, and reported that the pain was made worse with standing, walking, or bending forward, but relieved by rest and medication. The neurological examination of [Plaintiff] on this visit was almost entirely within normal limits. Specifically: [Plaintiff's] cranial nerves 3-12 appeared intact; she had equal, bilateral, motor strength of 5/5 in both upper extremities, and both lower extremities. However, there was tenderness in her neck, with a persistent restriction in [Plaintiff's] left rotation and lateral bending of the neck. [Plaintiff] also had greater than 11/18 tender myofascial trigger points, with the ones throughout the cervical and trapezoidal region her most significant that day.
>
> Also later that month, on January 26, 2019, [Plaintiff] presented at the emergency room, complaining of abdominal pain. [Plaintiff] reported that she had bloody stools for a month, and pain for over a week. She was admitted overnight, and observed with no determinable cause for her pain. A colonoscopy on January 30, 2019, showed hemorrhoids, but otherwise normal findings.

> [Plaintiff] was hospitalized from February 27 to March 4 of 2019. [Plaintiff] had a consultation with a cardiologist, who noted [Plaintiff's] superventricular tachycardia, with an ejection fraction of 50-55%. Upon discharge, [Plaintiff's] noted diagnoses included superventricular tachycardia, hypertension, sleep apnea, diabetes mellitus, nausea, and gastritis.
>
> On March 14, 2019, [Plaintiff] again complained of persistent head, neck, lower back, and knee pain, and reported that the pain was largely unchanged from her January visit. The neurological examination of [Plaintiff] on this visit was again almost entirely within normal limits. Once again: [Plaintiff's] cranial nerves 3-12 appeared intact; she had equal, bilateral, motor strength of 5/5 in both upper extremities, and both lower extremities; she again reported tenderness in her neck, with a persistent restriction in [Plaintiff's] left rotation and lateral bending of the neck (this time specifically noted to be at 60-70% of normal); and greater than 11/18 tender myofascial trigger points, with the ones over her trapezoidal region her most significant this time.
>
> On November 7, 2019, [Plaintiff] again sought treatment for her ongoing complaints of pain in her head, neck, hands, feet, and right knee. This time, she described it as a stiff, painful, dull ache, with pressure, and numbness. [Plaintiff] reported that the pain was a 4/10. As with the prior visits, [Plaintiff's] cranial nerves 3-12 appeared intact; she had motor strength of 5/5 in both upper extremities, and both lower extremities; and she again reported tenderness in her neck, with a persistent restriction in [Plaintiff's] left rotation and lateral bending of the neck. Upon examination, [Plaintiff] had: negative Tinnel's at the wrists and elbows; negative Phalen's sign, bilaterally; negative carpal compression test, bilaterally; negative Hoffman's test, bilaterally; normal gait and station; no ataxia; normal range of motion in the shoulders; no myofascial trigger points noted; and mildly restricted range of motion in the lumbar spine, but negative seated straight leg tests, bilaterally. Nerve conduction studies of the bilateral median motor nerves, the bilateral median sensory nerves, the bilateral ulnar motor nerves, and the bilateral ulner sensory nerves, were all within normal limits, as was a needle EMG of the right arm. During an emergency room visit later that month, [Plaintiff] reported dizziness, but no headache, chest pain, or shortness of breath.
>
> [Plaintiff] presented for treatment again in January and February of 2020, with almost identical results to the November 7, 2019 findings (except that new EMG or Nerve Conduction Studies were not performed).
>
> As for obesity, [Plaintiff] has consistently had a body mass index significantly above the 30.0 threshold for morbid obesity. ***

(R. at 20-22 (internal citations omitted).)

The ALJ also summarized and weighed the medical source opinions related to Plaintiff's physical impairments as follows:

> The state agency evaluators at the initial level opined that [Plaintiff] was restricted to sedentary exertion, with additional postural, environmental, and manipulative limitations, as well as some limitations on the nature and complexity of the work and workplace. The state agency evaluators at the reconsideration level opined that [Plaintiff] was capable of greater lifting and carrying, but would still be limited to sedentary exertion. They further opined that [Plaintiff] would have fewer additional limitations, and noted that the initial evaluation relied too much on the subjective reporting of [Plaintiff]. These opinions were based on a thorough review of the information available at the time. However, they are somewhat internally inconsistent, and they were all formed in or before July of 2019. Given the amount of evidence that has been submitted since then, these opinions are somewhat persuasive.
>
> [Plaintiff's] primary care physician, Michelle Graham, M.D., provided a statement dated April 6, 2020. In it, Dr. Graham opines that [Plaintiff] is medically disabled due to her underlying medical problems" and that she is unable to engage in any meaningful work activity. These are conclusions, without citation or support, and also address the central question of disability that is reserved to the Commissioner. Dr. Graham then speculates as to the chain of events that might take place if [Plaintiff] were not found disabled. Thus[,] this opinion is not persuasive.
>
> Dr. Nitin Paul Dhiman, M.D., provided answers to interrogatories at my request. Dr. Dhiman performed a thorough review of the evidence, including medical records submitted after the hearing. Dr. Dhiman opined that none of [Plaintiff's] medically determinable impairments meet or equal any of the listings. This opinion was shared by the state agency medical experts, and is supported by the record. As such, it is persuasive. Dr. Dhiman also opined that [Plaintiff] is capable of: lifting and carrying 20 pounds occasionally, and 10 pounds frequently; standing or walking a combined 4 hours out of an 8-hour workday, and sitting for 6 hours out of an 8-hour workday; and occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, and occasionally stooping, kneeling, crouching, or crawling. He further opined that [Plaintiff]: had no communication limitation, and no manipulative limitations; and should avoid very loud environments, bright lights, or flashing lights. These are largely supported by the medical records, and are therefore persuasive. The residual functional capacity used herein is slightly more restrictive, as it gives the benefit of any reasonable doubt to [Plaintiff], and further accommodates her allegations accordingly.

(R. at 24 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On October 07, 2020, the ALJ issued the non-disability determination. (R. at 12-31.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially gainful activity since January 2, 2019, the application date. (R. at 17.) The ALJ found that Plaintiff had the severe impairments of diabetes mellitus, idiopathic intracranial hypertension (IIH), fibromyalgia, morbid obesity, obstructive sleep apnea (OSA), osteoarthritis, and depression. (*Id.*) She further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"), in pertinent part, as follows:

> [Plaintiff] has the residual functional capacity to sedentary work as defined in 20 CFR 416.967(a) except: She can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequently reach in all directions including overhead with both upper extremities;

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

and frequently handle; finger and feel with both upper extremities; She can tolerate occasional exposure to and occasionally work around extreme cold and heat, wetness, vibration. She cannot tolerate any exposure to or work around hazards such as moving machinery or unprotected heights. She can perform work that involves simple routine tasks requiring no more than short simple instructions and simple work[-]related decision making with few work place changes.

(R. at 19.)

At step four, the ALJ determined that Plaintiff has no past relevant work. (R. at 25.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy, including Document Preparer, Information Clerk, and Electronic Patcher. (R. at 25-26.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 2, 2019, the date the application was filed. (R. at 26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 119 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff raises three issues in her statement of errors:  (1) that the ALJ failed to recognize and thus consider Plaintiff's Hashimoto thyroiditis and hypothyroidism as medically determinable impairments; (2) that the ALJ erred in her analysis of Plaintiff's fibromyalgia, pursuant to SSR 12-2p; and (3) that the ALJ's RFC determination is not supported by substantial evidence.  (ECF No. 12 at PAGEID ## 2731-2742.)  As discussed below, the Undersigned finds Plaintiff's third assignment of error to be well taken.  This finding obviates the need for in-depth analysis of the remaining issues.  Thus, the Undersigned need not, and does not, resolve the alternative bases that Plaintiff asserts support reversal and remand.  Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

In her third assignment of error, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence insofar as it "does not adequately account for [Plaintiff's] migraines" and because the ALJ "fail[ed] to discuss the impact that [Plaintiff's assistive device] would have on

8

her ability to work." (ECF No. 12 at PAGEID ## 2738-2742.)  First, Plaintiff argues that she suffers from "frequent, almost daily migraines," so she takes issue with the ALJ's RFC because it does not include "any accommodations for time off task; additional breaks; reduced concentration, persistence and pace; and noise and light exposure limits that are likely to be necessary, as a result of [Plaintiff's] migraines." (*Id.* at PAGEID # 2739.)  Plaintiff notes that the ALJ "deemed the interrogatory response provided by reviewing physician, Dr. Nitin Paul Dhiman, 'persuasive'; however, she failed to include all of the physicians' limitations in her [RFC] determination." (*Id.* at PAGEID # 2740.)  Next, Plaintiff argues that she has used a cane, rolling walker, and/or wheelchair for balance and assistance in ambulation, but the ALJ "failed to include an accommodation for any of these assistive devices in the [RFC] determination." (*Id.* at PAGEID ## 2740-2741.)  Plaintiff argues that her assistive device "is a necessary device and thus must be considered an exertional limitation," and "[t]he fact that [Plaintiff] can only use one extremity to carry, lift, reach, handle, finger and feel should have been included in the ALJ's [RFC] determination as this limitation may drastically decrease the number of occupations available." (*Id.* at PAGEID # 2741.)  Plaintiff submits that while the ALJ "acknowledges [Plaintiff's] use of a cane, walker, and wheelchair," the ALJ "fails to indicate if these limitation[s] were considered in [her] [RFC] determination." (*Id.*)

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).  A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*.  The governing regulations[3] describe five different

---

[3] Plaintiff's application was filed after March 27, 2017.  (R. at 178-184.)  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017).

9

categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5).  With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)–(5).  Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered.  20 C.F.R. § 416.920c(b)(2).  Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so.  *Id*.  If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . . " 20 C.F.R. § 416.920c(b)(3).

Against this backdrop, the Undersigned finds that the ALJ's RFC is inconsistent with her own analysis of the relevant evidence.  Specifically, as it pertains to Plaintiff's migraines, the ALJ discussed the medical interrogatory responses of Dr. Nitin Paul Dhiman, M.D., who opined that Plaintiff "should avoid very loud environments, bright lights, or flashing lights." (R. at 24 (citing R. at 2659).) The ALJ found Dr. Dhiman's opinion to be persuasive, but added that "**[t]he [RFC] used herein is slightly more restrictive [than Dr. Dhiman's opinion], as it gives the**

10

**benefit of any reasonable doubt to [Plaintiff]**, and further accommodates her allegations accordingly." (*Id.* (emphasis added).) The Undersigned finds, however, that this statement is directly at odds with the ALJ's actual RFC, which does not appear to account for any of the sound or light-related restrictions which Dr. Dhiman opined to be appropriate:

> [Plaintiff] has the residual functional capacity to sedentary work as defined in 20 CFR 416.967(a) except: She can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequently reach in all directions including overhead with both upper extremities; and frequently handle; finger and feel with both upper extremities; **She can tolerate occasional exposure to and occasionally work around extreme cold and heat, wetness, vibration. She cannot tolerate any exposure to or work around hazards such as moving machinery or unprotected heights.** She can perform work that involves simple routine tasks requiring no more than short simple instructions and simple work[-]related decision making with few work place changes.

(R. at 19 (emphasis added).)

"As a rule, the ALJ must build an accurate and logical bridge between the evidence and [their] conclusion." *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019) (citing *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004)). The ALJ failed to do so here. Again, the ALJ stated that Plaintiff's RFC is "more restrictive" than Dr. Dhiman's "persuasive" opinion that Plaintiff "should avoid very loud environments, bright lights, or flashing lights," but the ALJ's RFC is silent on the issue. (*Compare* R. at 19 *with* R. at 24.) This inexplicable and illogical inconsistency constitutes reversible error.[4] *Fleischer*, 774 F.

---

[4] The Commissioner submits that the ALJ's error is harmless, because "even if Plaintiff could not be exposed to very loud noise or bright and/or flashing lights, she could still perform the jobs the ALJ identified at step five." (ECF No. 17 at PAGEID # 2766.) The Commissioner adds that "there is no indication that the jobs at issue involve bright and/or flashing lights." The

Supp. 2d 875, 877 (N.D. Ohio 2011) ("[T]his Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.") (internal quotations and citations omitted).

Accordingly, Plaintiff's third assignment of error is well taken, and remand is appropriate to permit the ALJ to incorporate Plaintiff's environmental restrictions, including any restrictions regarding loud environments, bright lights, or flashing lights, or others that might be appropriate, into her RFC.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and

---

Undersigned disagrees and will not take the Commissioner's word on the issue. For example, the ALJ found at step five that Plaintiff could perform the requirements of a Document Preparer, DOT#: 249.587-108. (R. at 25.) While the Commissioner is correct that the DOT description for Document Preparer does not include the words "bright lights" or "flashing lights," the DOT job description does include "using [a] photocopying machine," which in the Undersigned's experience involves both bright and flashing lights. *See* 249.587-018 Document Preparer, Microfilming, DICOT 249.587-018. The Undersigned therefore concludes that instead of guessing whether the ALJ's presently-identified occupations would suit Plaintiff's future RFC, the better course of action is to remand so that a VE can consider such sound or light-related limitations before opining about which jobs a hypothetical Plaintiff may be able to perform.

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: May 13, 2022**              /s/ *Elizabeth A. Preston Deavers*
                                    **ELIZABETH A. PRESTON DEAVERS**
                                    **UNITED STATES MAGISTRATE JUDGE**